Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LUZ M. MORALES**<br><br>        **Plaintiff,**<br><br>      **v.**<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>        **Defendant.** | **Civil Action No. 19-4460 (ES)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

  Before the Court is plaintiff Luz M. Morales's ("Plaintiff") appeal of Administrative Law Judge Peter R. Lee's (the "ALJ") decision denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 *et. seq*. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 9.1(f). The Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons below, the Court AFFIRMS the Commissioner's decision.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

  Because the Court writes primarily for the benefit of the parties, only the essential facts are recounted here. On October 20, 2015, Plaintiff filed a claim for disability insurance benefits alleging disability beginning September 30, 2015, due to hemochromatosis, sleep apnea, carpal tunnel syndrome, necrosis, diabetes, hypertension, and high cholesterol. (D.E. No. 8, Administrative Record ("R.") at 14). The claims were denied on March 9, 2016. (*Id.*). On July 25, 2016, Plaintiff filed a written request for a hearing before an ALJ, which was held on March

6, 2018. (*Id.*). The ALJ issued a decision on April 30, 2018, denying Plaintiff's application for disability insurance. (*Id*. at 14–28). Plaintiff sought review from the Appeals Counsel. (*Id.* at 3). After the Appeal Counsel denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision.

Plaintiff filed the instant appeal on February 2, 2019. (D.E. No. 1). On June 9, 2020, Plaintiff filed a brief in support of the instant appeal (D.E. No. 15 ("Pl. Mov. Br.")), to which Defendant responded on September 10, 2020 (D.E. No. 18 ("Def. Opp. Br.")).

## II.   LEGAL STANDARD

### A.   Standard of Review

The Court applies plenary review to questions of law and otherwise applies the standard of "substantial evidence." *See* 42 U.S.C. § 405(g); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings of fact that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 283 (3d Cir. 2006). Thus, this Court is limited in its review because it

cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Regarding the ALJ's assessment of the record, the Third Circuit has stated, "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The Third Circuit has noted, however, that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

**B.    Determining Social Security Benefits**

To qualify for disability insurance benefits, the claimant must first establish that she is "disabled." *See* 42 U.S.C. § 423(a)(1)(E). "Under the Social Security Act, a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Halter,* 247 F.3d 34, 38–39 (3d Cir.2001) (internal citations and quotations omitted). A claimant is disabled for these purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is an "impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42. U.S.C. § 423(d)(3).

3

The Secretary of Health and Human Services has established a five-step sequential evaluation process to determine whether a plaintiff is disabled. *See* 20 C.F.R. § 416.920. If the determination at a particular step is dispositive of whether the plaintiff is or is not disabled, the inquiry ends. 20 C.F.R. § 416.920(a)(4). The burden rests on the plaintiff to prove steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At step five, the burden of production shifts to the government. *Id.*

At step one, the plaintiff must demonstrate that he has not engaged in any substantial gainful activity since the onset date of his severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(i) & 416.920(a)(4)(i). Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. 20 C.F.R. §§ 404.1572(a) & 416.972(a), (b). If an individual engages in substantial gainful activity, he is not disabled under the regulation, regardless of the severity of his impairment or other factors such as age, education, and work experience. 20 C.F.R. §§ 404.1520(b) & 416.920(b). If the plaintiff demonstrates he has not engaged in substantial gainful activity, the analysis proceeds to step two.

At step two, the plaintiff must demonstrate that his medically determinable impairment or the combination of his impairments is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). An impairment or combination of impairments do not satisfy this threshold if medical and other evidence only establishes slight abnormalities which have no more than a minimal effect on an individual's ability to work. *See Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

At step three, the ALJ must assess the medical evidence and determine whether the plaintiff's impairments meet or equal an impairment listed in the Social Security Regulations'

"Listings of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing"). *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii).

If a plaintiff is not found to be disabled at step three, the analysis continues to step four in which the ALJ determines whether the plaintiff had the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). If the plaintiff lacks the RFC to perform any work he had done in the past, the analysis continues to the next step.

In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the plaintiff can perform based on his age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v).

## III. DISCUSSION

### A. The ALJ's Decision

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since September 30, 2015, the date Plaintiff claimed that she was disabled. (R. at 20). At step two, the ALJ concluded that Plaintiff had the following nine severe impairments: degenerative disc disease, hemochromatosis, obesity, hypertension, diabetes, congestive heart failure, asthma, pancreatitis, and chronic kidney disease. (*Id.*). The ALJ concluded that Plaintiff's sleep apnea and carpal tunnel syndrome were not severe at step two as they "would not impose more than minimal work-related limitations of functioning." (*Id.*). The ALJ's holding was based on the finding that Plaintiff's "sleep apnea [was] controlled," that "X-rays reveal that the claimant's wrists [were] normal," and that Plaintiff "can do "fine and gross movements in both hands." (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of

5

impairments that met or medically equaled the severity of one of the impairments listed by the regulations. (*Id.* at 20–22).

At step four, the ALJ provided an analysis in light of the entire record, concluding that Plaintiff had the RFC to perform light work that involves "lift[ing] and carry[ing] 20 pounds occasionally and 10 pounds frequently; stand[ing]/walk[ing] 6 hours in an 8-hour day," but with certain limitations. (*Id.* at 22–27). The ALJ concluded that Plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms, but that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.*). Based on the record and the testimony of the vocational expert, the ALJ determined that Plaintiff was "capable of performing past relevant work as a Reception Clerk (DOT 237.367-038 . . . ) and as an Office Manager (DOT 169.167-034 . . . )," which match the job description of Plaintiff's past work (*Id.* at 27). Accordingly, the ALJ found that Plaintiff had not been disabled as defined by the Act since September 30, 2015. (*Id.*).

**B.     Consideration of Obesity**

Plaintiff argues that her obesity, which the ALJ found as a severe impairment at step two, "was not considered alone or in combination with Plaintiff's other impairments" at step three or step four. (Pl. Mov. Br. at 11–21). According to Plaintiff, "[t]here [was] no discussion, no combination, no consideration[,] and no rationale offered for this step [three] refusal to include obesity in a detailed medical equivalence discussion." (*Id.*). Similarly, Plaintiff argues that, at step four, the ALJ did not "discuss what[,] if any effect[,] [P]laintiff's obesity w[ould] have on any individual comorbid impairment[s,] or how/if obesity affect[ed] the RFC limitations at all." (*Id.* at 17). Plaintiff asserts that the ALJ engaged in "the same litany of cherry-picked impairment-

nullifications followed by yet another conclusory statement," when the ALJ found that that "even when obesity is considered in combination with [Plaintiff's] other impairments, it does not result in a disabling limitation of functioning." (*Id.* at 17–18 (quoting R. at 26). Plaintiff continues that the ALJ did not comply with Social Security Rulings ("SSR") 00-3p, 67 Fed. Reg. 31039, 31040–42 (May6 15, 2000); SSR 02-1p, 67 Fed. Reg. 57859, 57859 (Sept. 12, 2002); or the Third Circuit's holding in *Diaz v. Commissioner of Social Securities* that "an ALJ must meaningfully consider the effect of the claimant's obesity, individually and in combination with her impartments, on her workplace function at step three and at every subsequent step." 577 F.3d 500, 504 (3d Cir. 2009).

The Court disagrees. The ALJ cited the relevant records when considering Plaintiff's obesity. As the ALJ accurately noted, Plaintiff was obese but "at times her BMI [had] been below 30.0." (R. at 25). As the ALJ summarized, Plaintiff's BMI was recorded as above 30.0 kg/m$^2$ on just three occasions since September 30, 2015. On March 1, 2016, Dr. Rambhai Patel reported during the consultative examination that Plaintiff had a BMI of 31.0 kg/m$^2$. (*See* R. at 452). On July 28, 2017, Dr. Kara Chenitz, Plaintiff's treating nephrologist from September 19, 2016, to August 28, 2019, reported that Plaintiff had a BMI of 30.42 kg/m$^2$. (R. at 574). On September 6, 2017, Dr. Anngene Anthony noted during Plaintiff's emergency room visit that Plaintiff had a BMI of 32.12 kg/m$^2$. (R. at 569). Yet, whenever Plaintiff's weight or BMI was recorded during her other medical visits, all other medical records show that Plaintiff's BMI was below 30 kg/m$^2$. (*See, e.g.*, R. at 534 (BMI of 24.8 kg/m$^2$ on September 22, 2016), 603 (BMI of 24.6 kg/m$^2$ on October 13, 2016), 595 (BMI of 28 kg/m$^2$ on January 16, 2017), 587 (BMI of 26.34 kg/m$^2$ on February 21, 2017), 582 (BMI of 27.6 kg/m$^2$ on March 30, 2017), 578 (BMI of 27.62 kg/m$^2$ on June 26, 2017), and 43 (Plaintiff stating at the oral hearing held on April 25, 2018 that she has lost more than 30 pounds)). In other words, Plaintiff had obesity during two time periods: around

7

March 2016 and around July 2017 to November 2017, and she was not obese by, at the latest, April 2018.

The ALJ's analysis of Plaintiff's obesity at both step three and step four properly reviewed medical records during the relevant periods. For example, the ALJ considered Dr. Patel's report from March 1, 2016, the first report indicating that Plaintiff was obese, and concluded that, with respect to Plaintiff's cervical degenerative disc disease and bilateral carpal tunnel syndrome, Plaintiff had "normal reflexes and no neurologic deficits." (R. at 22 (citing generally R. at 451–53)). This report also showed that, while Plaintiff had hemochromatosis and lacked recent phlebotomy treatments, she had no complications from this condition, such as liver problems. (*Id.*). The ALJ also considered Dr. Chenitz's reports from July 1, 2016[1] and August 29, 2017, which is the second record where Plaintiff was reported as obese. (*Id.*). With respect to Plaintiff's hemochromatosis, the July 1, 2016 report revealed normal iron levels with high ferritin level. (*Id.*). The August 29, 2017 report further showed that Plaintiff's hypertension had "generally been well controlled" and that her chronic kidney disease, the only complication from her diabetes, "ha[d] been relatively stable." (*Id.*). Finally, the other report the ALJ considered at step three and step four in relation to Plaintiff's obesity was Dr. Anthony's report from November 6, 2017, the last record where Plaintiff was reported as obese. (*See id.*). This report indicated "normal neurologic functioning," "mild aortic abnormalities with an ejection fraction of 50%," "no recent ER visits or hospitalizations for asthma," and well-controlled hypertension. (R. at 2 (citing R. 567–71 & 595)). It is thus clear that the ALJ reviewed the pertinent medical records from the time periods when Plaintiff had obesity and considered its impact in combination with her other impairments as reflected in the records from those periods.

---

[1] The July 1, 2016 report includes information between March 1, 2016, when Plaintiff had a BMI of 31.0 kg/m$^2$, and September 19, 2016, when Plaintiff had a BMI of 24 kg/m$^2$.

8

The Court thus concludes that the ALJ's step three and step four considerations of Plaintiff's obesity satisfies the requirements under *Diaz v. Commissioner of Social Securities*, 577 F.3d 500, 504 (3d Cir. 2009), and SSR 00-3p and 02-1p. Plaintiff's argument as to her obesity is denied.

### C. Listing of Impairments

Next, Plaintiff argues that at step three the ALJ "never consider[ed] any two impairments in combination[,] much less all [nine] of them." (Pl. Mov. Br. at 28). More specifically, Plaintiff contends that the ALJ failed to recognize the Commissioner's controlling ruling governing the consideration of diabetes, and, as a result, failed to evaluate "all impairments together with diabetes . . . and obesity." (*Id.* at 26–27). Plaintiff further states that she was

> an obese, hypertensive, diabetic, 55 year old woman with stage 3 renal disease, a prior heart attack, congestive heart failure, heart wall failures, pulmonary hypertension, pancreatitis, a blood disorder, sleep apnea and spinal disc disease, the combination of which would undoubtedly present unscalable hurdles to maintaining an 8 hour workday and a 40 hour work week.

(*Id.* at 28). According to Plaintiff, none of these conditions were considered in combination.

The Court, again, disagrees. The listings at step three set "a higher level of severity than the statutory standard" of disability and explicitly "define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity'." *Sullivan v. Zebley*, 493 U.S. 521, 532 & 534 (emphasis in original); *see also* 20 C.F.R. § 416.925(a). Based on Plaintiff's impairments, the ALJ specifically identified Listing 1.04 (disorder of the spine) relating to her degenerative disc disease of the cervical spine; Listings 3.02 (chronic respiratory disorders) and 3.03 (asthma) relating to her asthma; Listing 4.02 (chronic heart failure) relating to her congestive heart failure; Listings 6.03 (chronic kidney disease, with chronic hemodialysis or peritoneal dialysis), 6.04 (chronic kidney disease, with

kidney transplant), 6.05 (chronic kidney disease, with impairment of kidney function), 6.06 (nephrotic syndrome), and 6.09 (complications of chronic kidney disease) relating to her chronic kidney disease, and Listings in section 7.00 (hematological disorders) relating to her hemochromatosis. (R. at 21–22). While the ALJ did not specifically identify Listings relating to Plaintiff's pancreatitis, hypertension, diabetes,[2] and obesity, he found that Plaintiff's impairments do not meet or equal any of the applicable Listings. (*Id.*). At the same time, throughout the ALJ's step three analysis, the ALJ repeatedly stated that "[t]he record does not show," "the record does not document," or "[t]here is no evidence of" either the relevant findings specified in the particular listings, or the required severity of such findings, indicating that the ALJ considered the pertinent records. (*See id.*).

The ALJ also concluded that, with respect to each Listings, Plaintiff did not "meet or *equal*" the particular Listings, showing that, contrary to Plaintiff's argument, the ALJ properly considered medical equivalence at step three. (*See id.* (emphasis added)). Indeed, the ALJ specifically considered congestive heart failure and chronic kidney disease in combination with her hypertension (*id.* at 21) and with her diabetes (*id.* at 22). As discussed above, the ALJ also considered her obesity with the other eight impairments. (*Id.*). Plaintiff's argument that the ALJ "never considered any two impairments in combination[,] much less all [nine] of them] is thus not supported by the record. (*See* Pl. Mov. Br. at 28). As a result, it appears that Plaintiff is actually asserting that the ALJ's analysis was, in part, conclusory or failed to consider certain ailments. The Court thus finds that, contrary to Plaintiff's argument, the ALJ's decision, read as a whole, reflect "sufficient development of the record and explanation of findings" to allow meaningful review of the step three analysis. *See Burnett*, 220 F.3d at 119; *Jones*, 364 F.3d at 505.

---

[2] The ALJ considered Plaintiff's diabetes in combination with her cardiovascular conditions and concluded, *inter alia*, that the record did not document any complications that satisfy the Listings in section 4.00. (R. at 22).

Critically, even assuming error, Plaintiff fails to show how any error was harmful. Specifically, Plaintiff fails to analyze how the outcome could have been different in light of her assertions. "Ordinary harmless error review . . . is applicable to administrative appeals." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x. 810, 814 (3d Cir. 2016) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Where, as here, a plaintiff alleges error by the ALJ, "the burden of showing harmfulness is normally on the party attacking the agency's determination." *See Shinseki*, 556 U.S. at 398. This means that Plaintiff must explain how she "might have prevailed at step three if the ALJ's analysis have been more thorough." *Holloman*, 639 F. App'x at 814. Plaintiff must "affirmatively point[] to specific evidence that demonstrates [s]he should succeed at step three." *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016).

Here, while asserting in a conclusory manner that she "affirmatively argues that her combination of impairments [was] the medical equivalent of the Commissioner's listings," Plaintiff fails to identify the relevant Listings or to muster any evidence demonstrating that her impairments, individually or in combination, met (even arguably) the requirements of these Listings. Plaintiff summarily argues that the ALJ should have found that her impairments met "the cardiovascular listings" in light of "her congestive heart failure, the slow or non-movement of her heart-walls ('hypokinisis and akinisis')[,] her listing level ejection fraction (20%), prior heart attack ('there was evidence suggesting infarct[']), poor exercise tolerance on stress testing, abnormal wall motion, diastolic dysfunction, pulmonary insufficiency[,] and mitral/tricuspid regurgitation." (Pl. Mov. Br. at 25). The various conditions referenced by Plaintiff appear to be broadly related to Listings 4.02 (referencing ejection fraction and diastolic failure), 4.04 (referencing systolic pressure measured during exercise), and 4.06 (referencing "secondary pulmonary vascular obstructive disease"). *See* 20 C.F.R. § 404, Subpt. P, App.1. But Plaintiff

11

fails to take the necessary next step—showing that the combination of her impairments met or equaled the findings specified in the Listings. Plaintiff thus fails to meet her burden of presenting sufficient evidence that her medical problems were of Listing severity such that the outcome would have been different if the ALJ had been more thorough. *Williams v. Comm'r of Soc. Sec.*, 156 F. App'x 501, 505 (3d Cir. 2005). Moreover, as will be discussed below, any error at step three was also harmless because the ALJ's step-four evaluation is supported by substantial evidence.

### D. RFC Determination

Finally, Plaintiff argues that the RFC finding was not based on substantial evidence and that it was "stated without rationale or relevant discussion." (Pl. Mov. Br. at 21). "After careful consideration of the evidence," the ALJ concluded that Plaintiff had the following RFC:

> [Plaintiff] can perform light work (lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours in an 8-hour day; and sit 6 hours in an 8-hour day). [Plaintiff] can never climb ladders, ropes, or scaffolds and can never be exposed to unprotected heights or hazardous machinery. [Plaintiff] can occasionally climb stairs and ramps, but never crawl. [Plaintiff] can occasionally stoop and crouch. [Plaintiff] can perform frequent fingering and handling and can frequently balance. [Plaintiff] can occasionally have exposure to extremes in environmental conditions or concentrated pulmonary irritants.

(*Id.* at 23).

Plaintiff divided the ALJ's RFC determination into six elements, each sentence constituting one element, and, in a series of hyperbolic questions, Plaintiff argues that the ALJ failed to explain any of these elements. Specifically, Plaintiff contends the ALJ "stated without rationale or relevant discussion" as to "why can plaintiff stand and walk 6-8 hours a day" while suffering from cardiovascular and kidney conditions; "[w]hy can [P]laintiff lift and carry 10-20 pounds all day" given her cervical disc disease and carpal tunnel syndrome; "why can't the [P]laintiff be exposed to unprotected heights or machinery" while she was found to be capable of performing an 8-hour

12

work day and 40-hour work week; "why can [P]laintiff climb stairs and ramps" and occasionally stoop and crouch, but never crawl; why was [P]laintiff's carpal tunnel syndrome found to be a non-severe impairment when she was also found to be able to "frequently—but not constantly—finger and handle;" and finally, why can Plaintiff be exposed to extremes in environmental conditions and concentrated pulmonary irritants given her pulmonary hypertension[3] and congestive heart failure. (*Id.* at 32–35).

Plaintiff seems to suggest that the ALJ must engage in a formulaic explanation of his RFC decision. The law does not hold the ALJ to such a rigid standard. An ALJ need not "adhere to any set format for explaining his analysis so long as there is 'sufficient development of the record and explanation of findings to permit meaningful judicial review.'" *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 162–63 (3d Cir. 2008) (quoting *Jones*, 364 F.3d at 505). Here, considering the record as a whole, the Court finds that the ALJ's analysis was sufficient to allow meaningful review and was supported by substantial evidence.

The ALJ provided a lengthy summary of the medical evidence at the beginning of the opinion under the section titled "Evidence." The ALJ addressed each impairment, citing to the relevant objective medical evidence as well as opinion evidence. (R. at 24–26). For example, with respect to Plaintiff's congestive heart failure, which Plaintiff repeatedly argues affects her ability to walk, stand, and "be exposed to extremes in environmental conditions and concentrated pulmonary irritants," the ALJ specifically discussed an electrocardiogram ("EKG") from March 1, 2016; a SPECT[4] study from March 27, 2016; an echocardiogram from October 14, 2016; another EKG from July 25, 2017; a second echocardiogram from September 1, 2017; as well as medical

---

[3] Nowhere in the ALJ's decision did the ALJ find that Plaintiff had pulmonary hypertension, and Plaintiff does not argue that the ALJ made an error. Nor does Plaintiff cite to any record evidence to substantiate the allegation that she was diagnosed with pulmonary hypertension.
[4] "SPECT" stands for single photon emission computed tomography.

13

opinions from Dr. Patel on March 1, 2016 and from Dr. James L. Amato, Jr. on April 28, 2016. (R. at 24–25). The ALJ noted that, while Plaintiff was hospitalized for congestive heart failure in April 2016, her conditions were reported as stable on October 13, 2016 and January 16, 2017. (*Id.* at 25). Similarly, while some of the earlier objective medical reports indicated that Plaintiff had symptoms such as "an ejection fraction of 20%, global hypokinesis, and akinesis of the inferolateral wall," the ALJ ultimately concluded that "the most recent study in the record revealed only mild aortic abnormalities with an ejection fraction of 50%." (*Id.*). Having found that Plaintiff had improved or recovered from her earlier conditions, the ALJ's analysis thus properly addressed Plaintiff's question as to why she was able to stand and walk 6 to 8 hours a day. The ALJ conducted similar analyses throughout his opinion. (*See* R. at 24–26).

  Similar to step three analysis discussed above, it is Plaintiff who retains the burden to show why the RFC was improper. *Bowen*, 482 U.S. at 146; *see also* 20 C.F.R. § 404.1545(a)(3) ("In general, you [the plaintiff] are responsible for providing the evidence we will use to make a finding about your residual functional capacity."). Plaintiff has not met her burden. Throughout her moving brief, Plaintiff rarely points to any record evidence to substantiate her contentions that the ALJ failed to consider certain medical records. (*See, e.g.*, Pl. Mov. Br. at 34). Of the few times where Plaintiff does point to record evidence, the evidence does not support her argument. For example, Plaintiff argues that, "between the onset date of September 2015 and the decision date of April, 2018," she was hospitalized or seen in the emergency room a dozen times, and the ALJ took none of this into consideration. (*Id.* at 33 (citing to R. 318–26, 436–48, 486–510 & 653–770)). Yet, of the five documents Plaintiff cites, the first document was a medical record from October 14, 2011, almost four years before the onset date. (R. at 318–26). The second and the third documents merely stated that the hospitals could not find any medical records of Plaintiff's

14

from November 18, 2015 or December 9, 2015.  (R. 436–48).  The last document shows that Plaintiff was neither hospitalized nor seen in the emergency room—she went to the hospital for a colonoscopy screening.  (R. at 655).

Plaintiff identified only one document that supports the allegation that she was admitted to the emergency room or hospitalized multiple times, but the ALJ discussed this document in his opinion.  (R. at 25 (discussing R. 486–520)).  The ALJ noted that Plaintiff was seen at the emergency room on April 18, 2016 for "epigastric pain, nausea, and chest tightness."  (*Id.*).  During this visit, Plaintiff also reported that she was discharged from the hospital 4 days ago for pancreatitis, which was attributed to her medication.  (*Id.*).  Ultimately, the ALJ concluded that the record did not document any flare-ups of pancreatitis since her April 2016 hospitalization.  In other words, the ALJ specially considered the medical records reflecting Plaintiff's emergency room visits and hospitalizations but determined that the records showed that Plaintiff was able to perform her past relevant work.

Plaintiff also relies on her own testimony at the hearing to argues that she could not perform skilled and semiskilled work, including her past job, because she was "fatigued, suffering [from] palpitation and panic episodes, daytime somnolence and frequent bouts of congestive heart failure, fluctuating blood sugars and pancreatitis."  (Pl. Mov. Br. at 35).  Plaintiff further argues that she was terminated from her last job because her lack of concentration prevented her from keeping up with her expected job production and efficiency.  (*Id.*).  The Commissioner points out that Plaintiff reported in her Disability Insurance Benefits application on November 27, 2015 and on June 14, 2016, that she had never been fired from a job.  (D.E. No. 18 at 24).  Thus, Plaintiff's testimony as to being fired was inconsistent with her prior report.

Here, the ALJ considered Plaintiff's testimony that "she was let go from her last job because she could not keep up with the work due to concentration issues." (R. at 23). When making an RFC determination, an ALJ is required to consider all evidence before him. *Burnett*, 220 F.3d at 121. However, an ALJ need not discuss in his opinion "every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 Fed. App'x. 130, 133 (3d Cir. 2004), so long as "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors" in reaching his conclusions, *Jones*, 364 F.3d at 505. Plaintiff's argument invites the Court to reweigh the evidence that the ALJ considered and accorded less weight. The Court cannot do so. *Williams*, 970 F.2d at 1182.

Accordingly, the Court finds that Plaintiff's attack on the ALJ's RFC determination mounts to nothing more than a disagreement with the ALJ's findings and further finds that the ALJ's RFC determination was supported by substantial evidence in the record as whole.

## IV.   CONCLUSION

For the foregoing reasons, the Court AFFIRMS the decision of the Commissioner of Social Security. An appropriate Order accompanies this Opinion.

Date: February 2, 2021.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**